IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


DERRICK ISRAEL,                    )
                                   )
                    Plaintiff      )
                                   )
        vs.                        )        Civil Action No. 08-428
                                   )        Magistrate Judge Amy Reynolds Hay
SUPERINTENDENT OF S.C.I.           )
FAYETTE; CAPTAIN MANCHAS; TRP.     )
LOUIS J. SERAFINI; HEARING         )
OFFICER KERRI CROSS; CSI #19; CSI  )
#1; ROBERT S. BITNER; JOHN DOE #1; )
JOHN DOE #2; JOHN DOE #3,          )
                                   )
                    Defendants     )        Re: Dkt. [18]


## MEMORANDUM OPINION

HAY, Magistrate Judge

        Derrick Israel, ("Plaintiff") was, at the time of initiating this Section 1983 action, and

continues to be, a Pennsylvania state prisoner.  He named a total of ten defendants, all of whom

were somehow involved in Plaintiff's disciplinary proceedings that resulted in Plaintiff serving

90 days in disciplinary custody, based on the Hearing Examiner's finding that Plaintiff attempted

to have drugs smuggled into the prison hidden in a radio.  Plaintiff was also criminally

prosecuted for this attempt but was found not guilty.

        Plaintiff's primary complaint is that he was denied procedural due process by the

imposition of the 90 days of disciplinary custody plus 16 months he spent in administrative

custody at the conclusion of the 90 days of disciplinary custody.  Because being housed in

disciplinary confinement for a mere 90 days does not implicate a state created liberty or property interest, Plaintiff's procedural due process claim fails as a matter of law.

**Relevant Procedural and Factual  History**

On March 31, 2008, Plaintiff filed a motion for leave to proceed in forma pauperis (IFP), Dkt. [1], which was granted.  Dkt. [2].  The operative complaint is Dkt. [3].  In that complaint, Plaintiff named ten Defendants all of whom were somehow involved in his being sanctioned with 90 days of disciplinary confinement.  One of the defendants is State Trooper Louis J. Serafini, who criminally investigated Plaintiff's actions and initiated the criminal complaint against him.  Another defendant is Captain Manchas, who is a Department of Corrections ("DOC") employee that internally investigated Plaintiff's activities and initiated the disciplinary proceedings against Plaintiff.  Defendant Kerri Cross was the hearing examiner who conducted the disciplinary hearing that resulted in Plaintiff being sanctioned with 90 days of disciplinary custody.  Plaintiff also named three John Doe Defendants, who were the members of the Program Review Committee ("PRC") to whom Plaintiff appealed his sanction, and who affirmed.   The Superintendent of SCI-Fayette was also named as a defendant for his role in affirming Plaintiff's sanction after Plaintiff appealed to the Superintendent from the PRC.  Plaintiff also named Robert Bitner who was, at the time, the DOC Chief Hearing Officer and the final person to whom Plaintiff appealed.  Defendant Bitner likewise affirmed.  Defendant also named as defendants "CSI # 19" and "CSI #1," both of whom are apparently fellow prisoners whom Plaintiff solicited to help him in the importation of the drugs into the prison and both of whom informed the proper authorities.  The three John Doe defendants, the two CSI defendants and Defendant Bitner were never served with process.

Plaintiff's complaint alleged that in March 2005, some three years prior to filing the current complaint, he received a misconduct charge for attempting to introduce drugs into the prison via having a fellow prisoner order a radio from outside the institution that would have drugs hidden inside of it. Plaintiff alleged that the two CSI Defendants gave false information to Captain Manchas who then based the disciplinary charges against Plaintiff on that false information. After receiving the disciplinary charges, Plaintiff requested that a certain witness, namely Peter Robinson (who may or may not be one of the CSI defendants, <u>see</u> Dkt. [3] at 7, ¶ 11), be made available to testify at Plaintiff's disciplinary hearing. In addition, Plaintiff requested that certain video tapes be made available to him, which were allegedly videotapes of the area and time period wherein Plaintiff was said to have recruited the two prisoners to participate in the scheme. Both of Plaintiff's requests were denied.

A misconduct hearing was held on April 1, 2005, at the conclusion of which, Defendant Cross found Plaintiff guilty of the misconducts and sanctioned Plaintiff to 90 days of disciplinary custody time, effective March 7, 2005. Dkt. [18-2] at 19. Consequently, 90 days after March 7, 2005 or roughly June 5, 2005, Plaintiff's sanction of being in disciplinary custody ended. Although Plaintiff appealed through all of the proper channels, Defendant Cross was affirmed. Even after Plaintiff had completed serving his 90 days in disciplinary custody, he was then placed in administrative custody for roughly 16 months thereafter. Plaintiff further complains that his custody level is a level four, apparently an undesirable level with restricted privileges which he alleges is a direct result of the false misconduct.

Meanwhile, on April 25, 2005, Plaintiff was criminally charged for his alleged actions in connection with attempting to introduce drugs into the prison. However, on November 3, 2006, a jury found Plaintiff not guilty of the charges.

In his complaint, Plaintiff lists Six "Claims for Relief:" (1) due process rights violated when he was denied witnesses at his disciplinary hearing; (2) denied due process when Defendants Manchas and Cross denied him access to the requested video tape and by failing to disclose evidence of Plaintiff being misidentified;[1] (3) denied due process when Defendant Cross denied Plaintiff access to various documentary evidence such as prison logs, and denied due process by Defendant Serafini's alleged use of some, perhaps false evidence included in an affidavit of probable cause; (4) denied due process when there were not adequate procedures to assure the credibility and reliability of the two CSI witnesses, notwithstanding that Defendant Cross held an in camera hearing to determine their credibility and reliability but relied solely upon the testimony of Defendant Manchas concerning the CSI witnesses, neither of whom personally appeared before Cross; (5) denied due process by Defendants Bitner, the Superintendent and the PRC members for their failure to investigate and challenge the procedures utilized by Defendant Cross at Plaintiff's disciplinary hearing; (6) denied substantive due process because of the myriad of procedural defects in Plaintiff's disciplinary proceedings; and (7) the actions of the Defendants as recounted in the complaint were taken in retaliation for Plaintiff's "exercise of his constitutional privileges such as the filing of grievances." Dkt. [3] at 12.

---

[1] Plaintiff does not elaborate on the alleged misidentification. It is possible he could be referring to the fact that in the original set of disciplinary charges, Plaintiff's inmate number was transposed, which necessitated the re-filing of amended disciplinary charges. Dkt. [18-2] at 15.

The Pennsylvania Attorney General's Office entered an appearance on behalf of Defendants Cross, Serafini, Manchas and the Superintendent. Dkt. [13]. Thereafter, a motion to dismiss or in the alternative a motion for summary judgment was filed on behalf of those Defendants (hereinafter, collectively, "the Moving Defendants"). The Court ordered that the motion would be treated as one for summary judgment and informed Plaintiff that he would have to respond accordingly, indicating that the motion would be decided under Fed.R.Civ.P. 56. Dkt. [20]. On September 5, 2008, Plaintiff filed a response in opposition, Dkt. [28], and a brief in support, Dkt. [29]. A mere four days later, Plaintiff filed a response in opposition, Dkt. [31], and a brief in opposition, Dkt. [32], identical in all ways to the prior filings, save for the addition of a certificate of service. On November 5, 2008, the Court issued a rule to show cause on Plaintiff as to why this action should not be dismissed as against the three John Doe defendants as well as the two CSI defendants. The rule was returnable November 25, 2008. To date, Plaintiff has not responded to the rule to show cause.

Plaintiff and the Moving Defendants have consented to have the undersigned exercise plenary jurisdiction over this case.

**Standard of Review**

Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden to show or point out why there is no genuine issue of material fact. Walters ex rel. Walters v. General Motors Corp., 209 F.Supp.2d 481, 484 (W.D. Pa. 2002). Once that burden has been met, the non-moving party must set forth "specific facts showing that

there is a *genuine issue for trial . . .*” or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). “Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no genuine issue for trial.”  Matsushita, 475 U.S. at 587.  The inquiry involves determining whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990).  If a court, having reviewed the evidence with this standard in mind, concludes that “the evidence is merely colorable . . . or is not significantly probative,” then summary judgment may be granted.  Anderson, 477 U.S. at 249-50.  Moreover, it is not enough for the nonmovant to show that there is some dispute as to facts, rather, “only disputes over facts that might affect the outcome of the suit will prevent summary judgment.” Anderson, 477 U.S. at 248.

In short, the summary judgment motion is an evidence testing device to see if there is sufficient evidence to support a party's position with respect to an issue for which that party bears the burden of proof at trial so as to justify holding a trial.  Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001)(summary judgment is the “moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.”).

**Discussion**

In their motion, the Moving Defendants point out, inter alia, that this action is time barred for the most part. Alternatively, Moving Defendants argue that Plaintiff has failed to show that he was deprived of a liberty interest under the Fourteenth Amendment. The Court agrees that Plaintiff has not carried his burden to show that he was deprived of a liberty interest.

### (1) Fourteenth Amendment Procedural Due Process Claims

The Moving Defendants point out that merely sending Plaintiff to disciplinary custody for 90 days does not implicate a liberty interest and, therefore, under the Constitution, such a sanction does not, as a matter of law, involve the taking of any liberty interest. Plaintiff, apparently reading the cases and seeing the writing on the wall, changes tack in his response and argues, contrary to his position in the complaint, not that his deprivations as a result of the disciplinary hearing denied him a liberty interest but denied him a property interest. Dkt. [29] at 4, ¶ 1 ("Plaintiff has established the deprivation of a protected property interest."). Plaintiff also attempts to say that his placement in the Administrative Custody after his 90 days in disciplinary

custody were finished deprived him of a liberty interest.[2]  We will address both the liberty

interest and the property interest.

Conducting a procedural due process analysis involves a two step inquiry: the first

question to be asked is whether the complaining party has a protected liberty or property interest

within the contemplation of the Due Process clause and, if so, the second question to be asked is

whether the process afforded the complaining party comported with constitutional requirements.

Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).

A protected liberty interest may arise from one of two sources: (1) directly from the

Fourteenth Amendment's due process clause itself or (2) from state law.  Hewitt v. Helms, 459

U.S. 460, 466 (1983).  There is no liberty interest created directly by the Fourteenth Amendment

---

[2]  In Mitchell v. Horn, 318 F.3d 523, 532 n.5 (3d Cir. 2003), the Court explained the following
differences between Disciplinary and Administrative custody:

> Disciplinary custody is the "maximum restrictive status of confinement" for inmates in
> the Pennsylvania prison system. DC-ADM 801 IV(B). Administrative custody is a
> "status of confinement for non-disciplinary reasons which provides closer supervision,
> control, and protection than is provided in general population." Commonwealth of Pa.,
> Dep't of Corr., Administrative Custody Procedures, Policy Statement DC-ADM 802
> IV(A) (Oct. 29, 1992).

Those same definitions continue to obtain even to this day.  See DC-ADM 802 Sec. 3(A)(1) (defining
Administrative Custody as "a status of confinement for non-disciplinary reasons that provides closer
supervision, control, and protection that [sic] is provided for in general population.") and DC-ADM 801
Glossary of Terms Section (defining "Disciplinary Custody" as "The maximum restrictive status of
confinement to which an inmate guilty of a Class I misconduct may be committed. An inmate may be
placed in disciplinary custody status for a period no longer than 90 days per misconduct charge.") .  Both
of these are available at the DOC website.
DC-ADM 801 is available at:

http://www.cor.state.pa.us/standards/lib/standards/801_Policy_Not_bolded.pdf

DC-ADM 802 is available at;

http://www.cor.state.pa.us/standards/lib/standards/DC-ADM_802_Administrative_Custody.pdf

that prevents an inmate from being subjected to disciplinary confinement, <u>see</u>, <u>e.g.</u>, <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995) ("Conner asserts, incorrectly, that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation"), or administrative confinement. <u>See</u> <u>e.g.</u>, <u>Hewitt v. Helms</u>, 459 U.S. 460, 468 (1983) ("It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."). <u>See</u> <u>also</u> <u>Stephany v. Wagner</u>, 835 F.2d 497, 499 (3d Cir. 1987)("the Due Process Clause does not give a prisoner a liberty interest in remaining in the general prison population").

Neither has Pennsylvania created a liberty interest in being free from disciplinary or administrative confinement. Addressing the issue of state created liberty interests, the United States Supreme Court in <u>Sandin v. Conner</u>, 515 U.S. at 484, held that a state government "may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

Placing Plaintiff in disciplinary confinement for 90 days does not impose such an atypical and significant hardship as a matter of law under the facts alleged in the operative complaint and/or under the evidence of record and hence, Plaintiff was not deprived of any liberty interest. <u>See</u> <u>e.g.</u>, <u>Griffin v. Vaughn</u>, 112 F.3d 703 (3d Cir. 1997) (confinement in administrative custody for fifteen months with only one hour of exercise per day five days per week did not amount to

an atypical and significant hardship and thus did not deprive prisoner of a liberty interest);

Acosta v. McGrady, No. Civ. A. 96- 2874, 1999 WL 158471 (E.D.Pa. March 22, 1999)

(disciplinary confinement in the RHU from April 1994 until June 11, 1995 was not an atypical

and significant hardship);  Smith v. Luciani, No. Civ. A. 97-3037, 1998 WL 151803, at *5 (E.D.

Pa. March 31, 1998) ("In this case, plaintiff was subjected to seven months disciplinary time, a

period of time half of that implicated in Griffin.  Therefore, punishment of seven months in

administrative custody, does not present 'the type of atypical, significant deprivation [in the

context of prison life] in which a state might conceivably create a liberty interest.'  Sandin, 515

U.S. at 486 (1995)."), aff'd, 178 F.3d 1280 (3d Cir. 1999) (Table).  Having been deprived of no

liberty interest, Plaintiff was not constitutionally entitled to any process.  Hence, whatever

"flaws" occurred in the disciplinary hearings, and/or appeals, Plaintiff was not denied his

procedural due process rights because he possessed no such rights given that the result of the

process did not deprive him of a liberty interest.

Nor does Plaintiff's stay in administrative segregation for a period of 16 months or

roughly 480 days, deprive him of a liberty interest as a matter of law.  See, e.g., Young v. Beard,

227 Fed.Appx. 138 (3d Cir. 2007).  In Young, the prisoner plaintiff was sanctioned with an

aggregate of 930 days of **disciplinary** confinement, wherein the conditions are somewhat harsher

than the conditions of administrative confinement.  The prisoner-plaintiff alleged his procedural

due process rights were violated because, like Plaintiff herein, the disciplinary hearing officer

denied a witness requested by the prisoner-plaintiff.  The Young court held as follows:

> Next, Young argues that prison officials violated his Fourteenth
> Amendment due process rights at various stages of the disciplinary proceedings.
> He claims that the hearing examiner improperly denied his requests to present

witnesses at the hearings, and he also challenges the sufficiency of the evidence supporting the hearing examiner's findings of guilt. Young presumes he is entitled to the procedural protections set forth in Wolff v. McDonnell, 418 U.S. 539, 563-67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), which held that a prisoner facing the deprivation of a constitutionally cognizable liberty interest following an administrative hearing has a due process right to certain procedural protections, including notice of the charges twenty-four hours prior to the hearing, an opportunity to call witnesses and present documentary evidence, and a statement of the grounds for disciplinary action. However, an inmate's procedural due process rights are not triggered unless the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Mitchell v. Horn, 318 F.3d 523, 531 (3d Cir. 2003) (quoting Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). We have held that fifteen months in administrative custody in a Commonwealth prison does not amount to a deprivation of a cognizable liberty interest, Griffin v. Vaughn, 112 F.3d 703, 708 (3d Cir. 1997), and it appears from the policy statement attached to the Commonwealth's summary judgment motion that the conditions in disciplinary custody are not substantially different from those experienced by a prisoner in administrative custody. See also Mitchell, 318 F.3d at 532, remanded to 2005 WL 1060658 (E.D.Pa. May 5, 2005) (noting this similarity). Despite having ample opportunity to do so, Young has failed to state facts or submit evidence showing that he was subject to conditions in disciplinary confinement that meet the Sandin standard. We therefore agree with the conclusion of the Magistrate Judge, as stated in her Report and Recommendation of December 6, 2004, that Young has not shown a deprivation of a cognizable liberty interest.

Id., at 141.  In like manner, Plaintiff's non-existent allegations concerning the conditions of his comparatively brief 480 day stay (as compared to the 930 days in Young) in administrative custody where conditions are even better than the conditions experienced in disciplinary custody, simply fail to state a claim under procedural due process because those conditions are, as a matter of law, not atypical and significant within the contemplation of Sandin.  Accordingly, Plaintiff's procedural due process claims fail to state a claim upon which relief can be granted.

This is so, even if Plaintiff was actually innocent of the disciplinary charges.[3]  In other words, where the discrete sanction imposed for a particular disciplinary violation does not deprive the person of a state created liberty interest, i.e., impose atypical and significant hardship on a prisoner, then a prisoner is not deprived of a state created liberty interest or a federally created liberty interest, even if he is actually innocent of the charge.  To put a finer point on it, merely being found guilty of a disciplinary charge for which the prisoner is actually innocent does not impose an atypical and significant hardship, rather it is only the sanction imposed as a consequence of the finding of guilt that determines whether the prisoner has been deprived of a state created liberty interest.  See  Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994)(where, based upon having "cocaine" in his cell, a prisoner was placed in punitive segregation, which State law had created a liberty interest in avoiding, but where the "cocaine" was later determined not to be cocaine, the Court held that "The fact that Ricker may have been innocent of the charges does not raise a due process issue. 'The [C]onstitution demands due process, not error-free decision-making.' McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983).");  Holleman v. Director, NO. CIV A 9:07CV294, 2009 WL 175250, *5 (E.D.Tex. Jan. 23, 2009) ("Even if the hearing officer made an error in determining that Holleman was guilty, the Fifth Circuit has specifically stated that in the context of prison disciplinary proceedings, the Constitution requires due process, not error-free decision-making.  McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir.

---

[3]  We note that Plaintiff's ultimately being found not guilty of the criminal charges does not necessarily mean that Plaintiff did not commit the actions he was accused of doing.  Rather, it merely means that the Commonwealth did not prove its case against the Plaintiff in the criminal matter beyond a reasonable doubt.  Under some lesser standard of proof, such as that which may obtain in prison disciplinary proceedings, it may well be that Plaintiff could legitimately be found guilty of the disciplinary charges.

1983). Holleman has not shown that he was denied the process which he was due nor that any rights secured to him by the Constitution or laws of the United States were violated, and so his claim for federal habeas corpus relief is without merit."); Wilson v. Brown, No. C 05-3949, 2008 WL 1930637, at *1 (N.D.Cal., May 1, 2008) ("Plaintiff's claim that Defendant D. Keithly erroneously found Plaintiff guilty of violating prison rules also is not cognizable. The fact that a prisoner may have been innocent of the charges does not raise a constitutional issue because the Constitution demands due process, not error-free decision-making.").

Faced with the weight of the law against him, Plaintiff changed tacks and argued not that he was denied a liberty interest but that he was instead denied a property interest. Dkt. [29] at 6 to 7. Plaintiff argued that "[i]rrespective of any liberty interest, Plaintiff was in fact deprived of a protected property interest as a result of [the] disciplinary proceedings against him[.]" Id., at 6. Plaintiff fails to clearly identify the "property" interests of which he was deprived. However, he seems to suggest that as a consequence of the disciplinary proceedings, Plaintiff was deprived of his prison job, his custody level was increased and he was transferred farther away from his family or, alternatively, that all these consequences caused him harm and he had some property interest in not being harmed in this way. See Dkt. [29] at 7, n. 1 and accompanying text.

Unfortunately for Plaintiff, loss of a prison job implicates no property interest, as a matter of law. See, e.g., Bryan v. Werner, 516 F.2d 233, 240 (3d Cir. 1975) ("We do not believe that an inmate's expectation of keeping a particular prison job amounts either to a 'property' or 'liberty' interest entitled to protection under the due process clause."); James v. Quinlan, 866 F.2d 627, 630 (3d Cir.1989) (recognizing that inmates have no constitutional right to be assigned a particular job; an inmate's expectation of keeping a specific prison job, or any job, does not

13

implicate a property interest under the fourteenth amendment); Ayers v. Campbell, 267 Fed. Appx. 176, 177 (3d Cir. 2008)("due process violations are neither triggered by the loss of a prison job, nor by the loss of the possibility for parole")(citations omitted); Fidtler v. Pa Dept. of Corrections, 55 Fed.Appx. 33, 35 (3d Cir. 2002)("we have held that a state inmate does not have a liberty or property interest in prison employment").

Neither is there a property interest in a particular custody classification nor in remaining in a prison close to family. Meachum v. Fano, 427 U.S. 215, 224 (1976) (inmate has no constitutional right to be confined at any particular facility); Thomas v. Norris, Civ.A. No. 3:02-01854, 2006 WL 2590488, at *11 (M.D.Pa. Sept. 8, 2006) (holding that inmates have no right to a particular prison classification); Wilson v. Horn, 971 F.Supp. 943, 947 (E.D.Pa.1997) (an inmate "has no federal constitutional right to a particular custody status"), aff'd, 142 F.3d 430 (3d Cir. 1998) (Table); Johnson v. Hill, 910 F.Supp. 218, 220 (E.D.Pa.1996) ("absent a state-created liberty interest that does not exist in Pennsylvania, prisoner placement is a matter of prison administration."). If Plaintiff has no property or liberty interest in being denied the foregoing or in being placed in disciplinary and/or administrative custody, and we have found that he does not, merely describing the foregoing as "harms" that he has suffered adds nothing to Plaintiff's claims. Whether harmful to Plaintiff or not, the deprivations are either deprivations of liberty and/or property or they are not. If they are not, and we have held that they are not such deprivations of liberty or property, then Plaintiff fails to sustain his burden to show deprivations of a constitutional import. Accordingly, the Moving Defendants are entitled to summary judgment as to all of Plaintiff's procedural due process claims. Similarly all of the non-moving defendants are likewise entitled to summary judgment based on the foregoing reasoning.

14

**(2) Substantive Due Process claims**

The Court turns next to Plaintiff's substantive due process claim. Essentially, Plaintiff's argument boils down to the claim that the Defendants' sanctioning him with 90 days of disciplinary custody and then placing him in administrative custody for 16 months when he was actually innocent of the disciplinary infraction violated substantive due process. Plaintiff explicitly argues that "Plaintiff's disciplinary conviction was made by Defendants in an arbitrary and constitutionally impermissible fashion, such that the disciplinary conviction breached Plaintiff's substantive due process rights[.]" Dkt. [3] at 11. Liberally construing Plaintiff's complaint in light of these arguments, we find that Plaintiff is making a substantive due process claim. See, e.g., Corn v. City of Lauderdale Lakes, 997 F.2d 1369, 1374 (11th Cir. 1993) ("The reason a substantive due process claim is also called an 'arbitrary and capricious due process claim' is because a showing that the government has acted arbitrarily and capriciously is a prerequisite for such a claim.").

As has been observed, substantive due process essentially affords protection against government actors taking actions for arbitrary or capricious reasons, which is what Plaintiff claims happened herein. See, e.g., County Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 165 (3d Cir. 2006) ("To prevail on a substantive due process claim, a plaintiff must demonstrate that an arbitrary and capricious act deprived them of a protected property interest"); Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 595 (3d Cir. 1998)("the deliberate and arbitrary abuse of government power violates an individual's right to substantive due process."); San Filippo v. Bongiovanni, 961 F.2d 1125, 1139 (3d Cir. 1992)("deliberate and arbitrary abuse of government power violates substantive due process"). Plaintiff implies, if not

outright states, that it is arbitrary and capricious to find him guilty of the disciplinary infraction when he is in fact innocent.

Plaintiff is simply wrong. Substantive due process "is an area of the law famous for its controversy, and not known for its simplicity." Woodwind Estates Ltd. v. Gretkowski, 205 F.3d 118, 122 (3d Cir. 2000), abrogation on other grounds recognized by, United Artists Theatre Circuit, Inc. v. Township of Warrington, PA, 316 F.3d 392 (3d Cir. 2003). In contrast to procedural due process' focus on procedures, substantive due process prohibits certain government actions irrespective of the procedures which attend those actions. Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 399 (3d Cir. 2000) ("The substantive component of the Due Process Clause limits what governments may do regardless of the fairness of procedures that it employs, and covers government conduct in both legislative and executive capacities."), abrogated on other grounds as recognized in, United Artists Theatre Circuit, Inc. v. Township of Warrington, PA, 316 F.3d 392 (3d Cir. 2003). Whereas procedural due process concerns deprivations of liberty/property interests and assures that such deprivations are not accomplished unless attended by certain procedures, substantive due process does not require a liberty/property interest in order to be violated. Block v. Potter, 631 F.2d 233, 236 (3d Cir. 1980)(holding that denial of parole based on race may state a claim for violation of substantive due process even though there is no liberty interest in parole);[4] Pittsley v. Warish, 927 F.2d 3, 6 (1st Cir. 1991)(under one theory of substantive due process "it is not required that the plaintiffs

---

[4] This court acknowledges that even though "the vitality of Block is questionable, it must be followed until overturned. See Jubilee v. Horn, No. 97-1755, slip op. at 1 (3d Cir. Mar. 26, 1998) (unpublished per curiam decision) ('[N]ot only do courts of appeals in other circuits disagree with Block, but more recent decisions by this Court suggest that Block may be obsolete.')." Rauso v. Vaughn, No. Civ. 98-6312, 1999 WL 111474, at *1 (E.D. Pa. March 2, 1999).

prove a violation of a specific liberty or property interest") (citing, Rochin v. California, 342 U.S. 165 at 172, 173 (1952)).

The standard for analyzing a substantive due process claim appears to depend upon whether one is challenging legislative or executive action. See, e.g., Wagner ex rel. Wagner-Garay v. Fort Wayne Community Schools, 255 F.Supp.2d 915, 922 (N.D. Ind. 2003) ("However, the appropriate standard for analyzing a substantive due process claim depends on whether 'legislation or a specific act of a governmental officer is at issue.'")(quoting, Dunn v. Fairfield Community High School Dist. # 225, 158 F.3d 962, 965 (7th Cir. 1998)). The Pennsylvania Department of Corrections is an executive branch agency. The standard of review for a substantive due process challenge to executive branch action requires that the aggrieved person establish that the executive action shocks the court's conscience. See, e.g., Hunterson v. DiSabato, 308 F.3d 236, 247 n. 10 (3d Cir. 2002) (wherein the Court of Appeals observed that "we have frequently employed the 'shocks the conscience' standard when considering a claim that an executive action amounted to a substantive due process violation.").

It was within the discretion of the Defendants to determine for themselves whether Plaintiff was in fact guilty and they could decide what weight, if any, to give the evidence of his guilt and the evidence of his innocence, even considering any claims of actual innocence by Plaintiff. Given that the PRC and the Superintendent and Chief Hearing Examiner decided to uphold the disciplinary sanction and maintain Plaintiff in disciplinary confinement, they apparently determined that the evidence against Plaintiff was true and Plaintiff's denials were not. Such determinations are completely within the Defendants' discretion and should not be overturned even if this court were to find to the contrary, i.e., that Plaintiff was not guilty of the

disciplinary infraction. This is so because the Defendants are entitled to make their own factual determinations. Disagreements between, on the one hand, the Defendants' assessment of the evidence concerning Plaintiff's guilt and their assessment of his denials of involvement and, on the other hand, this court's or even a jury's assessment of the evidence supporting his guilt and Plaintiff's denials, are not a basis for finding a violation of Plaintiff's constitutional right to substantive due process. In other words, for purposes of deciding whether Plaintiff was guilty of the disciplinary infraction, Plaintiff is guilty, unless and until the Defendants determine him not to be, and, even if the Defendants were erroneous in determining that he was guilty, such an error does not constitute a substantive due process violation. Bishop v. Wood, 426 U.S. 341, 350 (1976)("The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect . . . decisions"), overruling on other grounds as recognized in, Whims v. Harbaugh, 139 F.3d 897 (4th Cir. 1998) (Table, Text in Westlaw); Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994) (applying rule of Bishop v. Wood in a prisoner case); Palmigiano v. Mullen, 491 F.2d 978, 980 (1st Cir. 1974)("There is no federally-protected right to a particular classification nor even to an error-free decision by the state authorities. 'The Constitution does not assure uniformity of decisions or immunity from merely erroneous action, whether by the courts or the executive agencies of a state.'")(quoting Snowden v. Hughes, 321 U.S. 1, 15 (1944) (Frankfurter, J., concurring)); Tansy v. Mondragon, 52 F.3d 338 (Table), 1995 WL 216926, at *5 (10th Cir. 1995) ("Even assuming that some of the allegations against Mr. Tansy were inaccurate, this does not establish a factual dispute as to whether he was deprived of substantive due process."). That the Defendants committed a factual error in the course of their determining whether Plaintiff was guilty of the disciplinary infraction and, therefore, worthy of placement in Disciplinary Custody,

(assuming that they did do so erroneously) simply does not shock this court's conscience. That this is the case should not be surprising. If it does not offend the constitution that an innocent person is convicted of a crime, and made to suffer imprisonment as a consequence thereof, and, the Supreme Court has determined that it does not so offend,[5] then *a fortiori*, that a convicted prisoner is "mistakenly" found guilty of a disciplinary infraction and made to suffer a greater loss of privileges in comparison to those in the general population, does not, merely because the determination is mistaken, violate the constitution.

Hence, the Moving Defendants are entitled to summary judgment as to Plaintiff's substantive due process claims. The non-moving Defendants would likewise be entitled to summary judgment on such claims based upon the same foregoing reasoning.

### (3) Retaliation claims

Next, we take up Plaintiff's retaliation claims. Plaintiff claims in conclusory fashion that the initiation of disciplinary proceedings, in addition to the conducting of and results of the disciplinary hearing and appeals as well as his placement in Administrative custody were all adverse actions taken in retaliation for "Plaintiff's exercise of his constitutional privileges such as the filing of grievances." Dkt. [3] at 12, ¶ 38.

In order to prevail on a retaliation claim, a plaintiff must prove: (1) that he engaged in constitutionally protected activity; (2) that he was subject to adverse actions by a state actor; and (3) the constitutionally protected activity was a substantial motivating factor in the state actor's decision to take adverse action. Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997) (citing

---

[5] See Herrera v. Collins, 506 U.S. 390, 400 (1993)("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief."). See also id. at 404 ("a claim of 'actual innocence' is not itself a constitutional claim").

Mt. Health City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1997)).  If the plaintiff proves

these elements, the burden shifts to the state actor to prove that it would have taken the same

action without the unconstitutional factors.  Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,

429 U.S. at 287.  In the prison context, the state actor may rebut a plaintiff's claim by showing

that his actions were motivated by legitimate penological objectives.  Pratt v. Rowland, 65 F.3d

802 (9th Cir. 1995).  If the prison officials make such a showing, then they are entitled to

summary judgment.  Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001) ("This means that, once a

prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating

factor in the challenged decision, the prison officials may still prevail by proving that they would

have made the same decision absent the protected conduct for reasons reasonably related to a

legitimate penological interest."); Iseley v. Dragovich, 90 Fed.Appx. 577, 581 (3d Cir. 2004)

(upholding summary judgment, the Court held that "[a]ssuming arguendo that Iseley met his

initial burden under Rauser regarding the retaliatory denial of medical care, for all of the reasons

set forth above and in the District Court's opinion, the defendants have shown that they would

have arrived at the same decision regarding appropriate treatment for Iseley's dental problems,

his nearsightedness, and for Hepatitis C condition in 1999, 2000 and 2001."); Carter v. McGrady,

292 F.3d 152, 153 (3d Cir. 2002) ("We conclude, assuming *arguendo* that Carter has correctly

described the attitude at SCI-Mahanoy about jailhouse lawyering and that he has made out a

*prima facie* case of retaliation, that there is no genuine issue of material fact that the prison

officials would have disciplined Carter for these violations notwithstanding his jailhouse

lawyering.").

Because Plaintiff was found guilty of the misconduct based upon some evidence that he did engage in the acts he was accused of, even if Plaintiff had presented sufficient evidence to support his prima facie case of retaliation, he is essentially barred from succeeding on his retaliation claim because such a finding of guilt as to the misconduct charges conclusively establishes that the defendants would have taken the same actions regardless of any protected activity engaged in by Plaintiff. Wright v. Kellough, 202 F.3d 271 (Table), 1999 WL 1045787 (6th Cir. 1999) (inmate could not state claim of retaliation where he was found guilty of misconduct charge giving rise to retaliation claim); Vercheres v. Wilkinson, 194 F.3d 1315 (6th Cir. 1999)(Table, Text in Westlaw)("Thus, Vercheres's retaliation claim was properly dismissed, as the finding that he was guilty of stalking satisfied the defendants' burden of showing that the guard would have charged him with a violation, even if Vercheres had not filed a grievance."); Harris-Debardelaben v. Johnson, 121 F.3d 708 (Table), 1997 WL 434357, at *1 (6th Cir. July 31, 1997); Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir. 1998); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (being found guilty of a prison rule violation based on some evidence "essentially checkmates [the] retaliation claim."), cert. denied, 515 U.S. 1145 (1995); Goff v. Burton, 7 F.3d 734, 738 (8th Cir. 1993) (if discipline which the prisoner claims to have been retaliatory was imposed for actual violation of prisoner rules, prisoner's claim of retaliation must fail). Accordingly, the Moving Defendants are entitled to summary judgment as to Plaintiff's retaliation claims, as would the non-moving Defendants.

### (4) Claims against Defendant Serafini

The court next turns to Plaintiff's claim that Trooper Serafini engaged in a Fourth Amendment violation by "use of impeached evidence to get an Affidavit of Probable Cause."

Dkt. [29] at 11. Plaintiff never specifies what the impeached evidence is that Trooper Serafini allegedly utilized in the affidavit of probable cause upon which were based Plaintiff's criminal charges.

Plaintiff alleges a claim of false arrest and false imprisonment as a result of Trooper Serafini's use of the allegedly impeached evidence. These claims are barred by the statute of limitations, which is two years.[6] The cause of action accrued whenever the arrest of Plaintiff occurred for the crimes he was charged with as a result of Officer Serafini's affidavit of probable cause, which was no later than May 25, 2005, when monetary bail of $50,000 was set for Plaintiff for these charges as revealed by the criminal docket. See Dkt. [18-2] at 4. Plaintiff is not deemed, pursuant to the prisoner mail box rule, to have filed the present complaint until, at the earliest, March 25, 2008, the date whereon he signed the complaint and the motion to proceed IFP, nearly three years after the arrest.

As the Supreme Court has explained:

> False arrest and false imprisonment overlap; the former is a species of the latter. "Every confinement of the person is an imprisonment, whether it be in a common prison or in a private house, or in the stocks, or even by forcibly detaining one in the public streets; and when a man is lawfully in a house, it is imprisonment to prevent him from leaving the room in which he is." M. Newell, Law of Malicious Prosecution, False Imprisonment, and Abuse of Legal Process § 2, p. 57 (1892) (footnotes omitted). See also 7 S. Speiser, C. Krause, & A. Gans, American Law of Torts § 27:2, pp. 940-942 (1990). We shall thus refer to the two torts together as false imprisonment. That tort provides the proper analogy to the cause of action asserted against the present respondents for the following reason: The sort of unlawful detention remediable by the tort of false imprisonment is detention

---

[6] Green v. Robinson, 112 Fed.Appx. 165, 166 n.1 (3d Cir. 2004)("The statute of limitations for Green's Section 1983 malicious prosecution claim is governed by the statute of limitations for personal injury claims provided by Pennsylvania law, which is two years."); Fitzgerald v. Larson, 769 F.2d 160, 162 (3d Cir. 1985) ("the two-year Pennsylvania limitation for personal injury actions of 42 Pa.Const.Stat.Ann. § 5524 governs all § 1983 actions brought in Pennsylvania.")

without legal process, see, e.g., W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 11, p. 54, § 119, pp. 885-886 (5th ed.1984); 7 Speiser, supra, § 27:2, at 943-944, and the allegations before us arise from respondents' detention of petitioner without legal process in January 1994. They did not have a warrant for his arrest.

The running of the statute of limitations on false imprisonment is subject to a distinctive rule-dictated, perhaps, by the reality that the victim may not be able to sue while he is still imprisoned: "Limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends." 2 H. Wood, Limitation of Actions § 187d(4), p. 878 (4th rev. ed.1916); see also 4 Restatement (Second) of Torts § 899, Comment c (1977); A. Underhill, Principles of Law of Torts 202 (1881). Thus, to determine the beginning of the limitations period in this case, we must determine when petitioner's false imprisonment came to an end.

Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process-when, for example, he is bound over by a magistrate or arraigned on charges. Dobbs, supra, § 39, at 74, n. 2; Keeton, supra, § 119, at 888; H. Stephen, Actions for Malicious Prosecution 120-123 (1888). Thereafter, unlawful detention forms part of the damages for the " entirely distinct" tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process. Keeton, supra, § 119, at 885-886; see 1 F. Harper, F. James, & O. Gray, Law of Torts § 3.9, p. 3:36 (3d ed.1996); 7 Speiser, supra, § 27:2, at 943-945. "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." Keeton, supra, § 119, at 888; see also Heck, supra, at 484, 114 S.Ct. 2364; 8 Speiser, supra, § 28:15, at 80. Thus, petitioner's contention that his false imprisonment ended upon his release from custody, after the State dropped the charges against him, must be rejected. It ended much earlier, when legal process was initiated against him, and the statute would have begun to run from that date, but for its tolling by reason of petitioner's minority.[3]

_____

[3] This is not to say, of course, that petitioner could not have filed suit immediately upon his false arrest. While the statute of limitations did not begin to run until petitioner became detained pursuant to legal process, he was injured and suffered damages at the moment of his arrest, and was entitled to bring suit at that time. See Adler v. Beverly Hills Hospital, 594 S.W.2d 153, 156 (Tex.Civ.App.1980) ("We may concede that a person falsely imprisoned has the right to sue on the first day for his detention").

Wallace v. Kato, 549 U.S. 384, 388- 90 (2007)(some footnotes omitted). Plaintiff's argument that his cause of action did not accrue until the jury acquitted him, was squarely considered by the Court in Wallace v. Kato and rejected. Hence, because Plaintiff filed the instant complaint more than two years after he was arrested for the charges that form the basis of his claim of false arrest/false imprisonment, Defendant Serafini is entitled to summary judgment as to any claim of false arrest and/or false imprisonment.[7, 8]

We turn next to Plaintiff's claim of malicious prosecution. Plaintiff has the burden to establish each of the elements of his Section 1983 malicious prosecution claim. See Camiolo v. State Farm Fire and Cas. Co., 334 F.3d 345, 362-3 (3d Cir. 2003)("a plaintiff must show. . . ."). Those elements are as follows:

> (1) the defendant [in the malicious prosecution civil suit] initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

---

[7] We note that the evidentiary record does not make clear whether Petitioner was actually arrested on the charges by Trooper Serafini prior to the issuance of any judicial process. For present purposes, we assume that Trooper Serafini did arrest Plaintiff prior to the issuance of any judicial process. Had Trooper Serafini not arrested Plaintiff until after the issuance of judicial process, it appears pursuant to the reasoning of Kato, Plaintiff would have no cause of action for false arrest/false imprisonment, rather, Plaintiff's only claim would be for malicious prosecution.

[8] In the alternative, because Plaintiff was already a convicted prisoner serving a sentence at the time of the arrest, he can not make out a claim of false arrest and/or false imprisonment as a matter of law. See, e.g., Parker v. City of New York, No. 05 Civ. 1803, 2008 WL 110904, at *9 (S.D.N.Y., Jan. 7, 2008) ("A plaintiff does not have a claim for false arrest . . . under section 1983 if, at the time of his arrest and prosecution, he is already in custody on other charges, because there is no deprivation of liberty interests."); McCabe v. City of Philadelphia, No. Civ.A. 01-CV-3975, 2002 WL 32341787, at *4 (E.D.Pa. Nov. 13, 2002)("A plaintiff cannot state a claim for false arrest when he is already in custody."), aff'd, 76 Fed.Appx. 464 (3d Cir. 2003); Goncalves v. Reynolds, 198 F.Supp.2d 278, 283 (W.D.N.Y.2001) (noting that plaintiff could not state a claim for false arrest because, at the time of his arrest, he was already detained pursuant to earlier charges and based upon his prior convictions).

Id.; Lipay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993) ("We have recognized such a claim [i.e., a malicious prosecution claim] under section 1983, so long as the plaintiff proves the existence of the elements of the common law tort of malicious prosecution.").  Presently, Plaintiff has adduced no evidence of a deprivation of liberty.

The record viewed in a light most favorable to Plaintiff shows that at the time Defendant Serafini initiated the prosecution, i.e., April 25, 2005, the date whereon Defendant Serafini filed the affidavit of probable cause, Dkt. [32-3] at 2, Plaintiff was a currently incarcerated and convicted prisoner.  Specifically, the court takes judicial notice of the fact that Petitioner was serving either a 12 to 30 year sentence for, inter alia, robbery and aggravated assault[9] or a 5 to 10 year sentence for aggravated assault.[10]

---

[9] See Israel v. Wakefield, No. 2:07-cv-04899-MAM (E.D. Pa. Dkt. 5at p. 3)(available on PACER) which is the R&R addressing Plaintiff's habeas petition challenging Philadelphia Common Pleas Court sentences imposed in

(1) Commonwealth v. Isreal, CP-51-CR-1006081-1998 available at

http://ujsportal.pacourts.us/DocketSheets/CPReport.aspx?matterID=103840284

and in

(2) Commonwealth v. Isreal, CP-51-CR-0308391-2001, available at:

http://ujsportal.pacourts.us/DocketSheets/CPReport.aspx?matterID=103840294

The Court notes that Plaintiff apparently spells his last name variously as "Israel" or "Isreal."

[10] Commonwealth v. Derrick Isreal, No. CP-51-CR-0203761-2001 which is available at

http://ujsportal.pacourts.us/DocketSheets/CPReport.aspx?matterID=103840290

See also Israel v. Lawler, No. 2:08-cv-04175-MAM (E.D. Pa.)(Plaintiff's Section 2254 habeas petition challenging the convictions for aggravated assault)(available on PACER).
We need not decide which sentence Petitioner was serving at the time, just that he was serving one of the sentences.  Most likely, given that 12 to 30 year sentence was imposed earlier than the 5 to 10

(continued...)

Given that he was already deprived of his liberty as a result of the convictions and serving

sentences for those convictions, Plaintiff has utterly failed to argue the existence of any

deprivation of liberty let alone adduce any evidence that he was deprived of his liberty as a result

of the alleged malicious prosecution by Defendant Serafini, as is Plaintiff's burden.   As

succinctly explained by one court:

> Any constitutional claim for malicious prosecution must rest on a violation
> of the Fourth Amendment's prohibition of unreasonable searches or seizures.
> Albright v. Oliver, 510 U.S. 266, 273-74, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).
> A prisoner in custody when a criminal action is commenced against him cannot
> bring a malicious prosecution claim because the filing of criminal charges does
> not deprive him of liberty. If he is ultimately convicted and receives an additional
> sentence, he has suffered a loss of liberty, but in that case the proceedings would
> not have been terminated in his favor. A malicious prosecution claim is therefore
> not available to Jacobs. See Henderson v. McGinnis, No. 91 C 886, 1996 WL
> 417556, *10 (N.D.Ill., Jul 22, 1996).").

Jacobs v. Godinez,  No. 95 C 7020, 1998 WL 128676, at *2 (N.D.Ill. March 18, 1998).  See,

also,  Rauso v. Romero, No. Civ.A. 03-5810, 2005 WL 1320132, at *2 (E.D.Pa. June 2,

2005)(the plaintiff failed to state a claim of malicious prosecution because "plaintiff did not

sustain a 'deprivation of liberty consistent with the concept of a seizure' in connection with the

hearing or the recission [sic, should be "rescission"] of parole-since he was already in prison at

the time.");  Holmes v. Grant, No. 03 Civ 3426, 2006 WL 851753, at *13-*14 (S.D.N.Y. March

31, 2006)(concluding that prisoner-plaintiff had not been deprived of liberty for purposes of

malicious prosecution claim where inmate was "being charged with new criminal offenses and

---

[10](...continued)
year sentence and the 5 to 10 year sentence was specifically indicated on the Common Pleas Court
docket to be served consecutively to any sentence Plaintiff was then serving, it is likely Plaintiff was
serving the 12 to 30 year sentence at the time Defendant Serafini initiated the alleged malicious
prosecution.

being forced to appear in court to defend himself"); <u>Wright v. Kelly</u>, No. 95 Civ. 0688H, 1998 WL 912026, at *3 (W.D.N.Y. Oct. 16, 1998) (refusing to "find the fact that plaintiff was required to appear at court proceedings ... to be a deprivation of liberty of a constitutional dimension").

Although the non-moving Defendants have not filed a motion for summary judgment, the foregoing reasoning as to all of Plaintiff's claims applies equally to the non-moving Defendants as well and hence, summary judgment is properly entered in favor of the non-moving defendants also.[11]

For the above-stated reasons, summary judgment is properly entered in favor of all defendants.  An appropriate Order follows.

/s/ <em>Amy Reynolds Hay</em>
United States Magistrate Judge

12 March, 2009

cc:    Derrick Israel
       EN-9989
       SCI Huntingdon
       1100 Pike Street
       Huntingdon, PA 16654-1112

       All Counsel of Record via CM-ECF

---

[11] The court has power to sua sponte grant summary judgment as to these non moving defendants. <u>Canell v. Bradshaw</u>, 97 F.3d 1458 (Table), 1996 WL 547978 at **5 (9th Cir. 1996) (unpublished)("A district court may grant summary judgment to a non-moving party sua sponte . . . ."). <u>See</u> <u>also</u> <u>Celotex</u>, 477 U.S. at 326 ("Our conclusion is bolstered by the fact that district courts are widely acknowledged to possess the power to enter summary judgments sua sponte . . . .").